Good afternoon, Your Honors. I'm Patricia Andriani. I represent the appellant Red Culbertson. There were two issues that were certified for appeal in this circuit, one being the Batson-Wheeler error and the other the severance. I think that it would be appropriate at this time if I submit on the Batson-Wheeler argument and continue on to the severance argument. I mean, if that's appropriate to the court. I still don't understand the severance argument, I don't think. Okay. Well, that's very much true. Newton gives a right to severance. Yes. Because the defendant whose statement will be used against both him and the other defendant isn't subject to cross. Here, Knighton and Ramirez are subject to cross. I just don't get it. That other case that was cited was about somebody that took the fifth, so he was not subject to cross. Here, nobody took the fifth. They were both subject to cross. That's what the case, what Bruton is about, is witness being subject to cross. So I just don't understand the argument. Well, I think that the idea that the defendant was prejudiced, even though Knighton testified. But wait, prejudice, people are prejudiced by proof that they committed the crime. The prejudice has to be some kind of unfair prejudice in the nature of Bruton error. That's what I'm suggesting, Your Honor. I believe there was Bruton error here. First of all, the court did not rule on the severance motion from the Bruton aspect. The trial court decided on the admission of Ramirez's statement did not qualify for severance under evidence code section 1230, not under constitutional. How could there be Bruton error where the witness is testifying subject to cross? The position of appellant is under Douglas, O'Neill, and Bruton, and I believe prior counsel read you this quotation. The court stated that effective confrontation of a witness who has made an out-of-court statement implicating the defendant was possible only, only if the witness affirmed that the statement was his. Now, then that was adopted by Bruton at page 127, that statement from Douglas v. Alabama. So what we have here is, yes, Mr. Knighton did testify, but he did not admit that he made those statements. So it was a very illusory cross-examination. How could they cross-examine Knighton on statements, the hearsay statements that Ramirez alleged that he made when he denied that he made them? So in a roundabout way, there was no cross-examination because the cross-examination of Ramirez was based solely. That's really routine in trials, civil and criminal. Somebody says that witness said it, and the witness says I never said that. I don't understand where that interferes with cross. Under any of these cases that you've cited. Under Douglas? Under the quotation that I just read here? Well, for example, you have Douglas. I think the guy took the fifth. So the barrier to cross was that he wouldn't get on the witness stand, raise his right hand, take the oath and testify. Correct. He did not admit or deny in that case. Well, he didn't testify. Right. But here is a situation that you can't cross-examine Knighton on a statement that he said he didn't make. You mean it may not? I thought if he's on a witness stand and he's under oath, you can cross-examine him. If I'm on the witness stand and I said this person lied about me, I never said those things. If I said that I never said them, how can a defense attorney turn around and cross-examine me as to why I said them? People do it all the time. The defense counsel could certainly question him why that misunderstanding of a statement occurred. What did you say? And so forth and so on. It was perfectly possible to examine him. Well, in the court of appeal and the district court, apparently they believe that it was to the defendant's advantage that they could question about what he allegedly said to Knighton since he didn't say it because it benefited Culbertson and Morris. But I would say that that's not exactly true. What the appellate court did, the court of appeal, is they made findings that the statements of Ramirez were admissible under the evidence code, but they never directly made conclusions or findings on the severance issue. And so, therefore, the last court in determining the court of appeal actually avoided opining on whether the trial court abused its discretion in terms of denying the severance motion. By the way, there was many more than one severance motion. The first one was granted when the initial statements came in that Mr. Knighton said he killed a guy in county jail. Severance was granted. The judge changed his mind. Now all the defendants are back together again. And this is a case also I'd like to point out that Mr. Culbertson was placed in a situation where it was prejudicial association with these co-defendants who had very violent pasts. He was unable to get Morris' or Lejeune's possible exonerating testimony had that trial been severed from them under Bruton. What Supreme Court case has a holding that the state court unreasonably applied or acted contrary to on the severance issue? I know Bruton person wouldn't testify and Douglas, the person wouldn't testify. I can't remember the third right now. O'Neill. O'Neill. O'Neill. Yes, thank you. Off the top of my head, I cannot answer that question, Your Honor. But I do believe there's the case of Williamson v. United States. That talks about evidence code 1230 and that it doesn't apply to the collateral statements. Is that a Supreme Court case? U.S. Supreme Court, yes. And they talked about the California rule of evidence? Apparently it came up that the evidence. What did they say was unconstitutional? It says it doesn't apply to collateral statements, the kind that we have here where Ramirez is giving hearsay testimony of what Knighton said that Culbertson and Morris and Lujan did. And Williamson says it doesn't apply to these collateral statements. So you cannot bring them in under the evidence code without. Is that a ruling of constitutional law? Okay, how about. Is that a ruling of constitutional law? I'm sorry. Did they rule that as a matter of constitutional law? I don't believe so. But Mitcherson v. Marsh. But how did they get to the question? How would the Supreme Court reach the question? I honestly do not recall at this moment. You don't read the case? Yes, I did, but at this moment I don't recall. Help me with something getting back to Nelson v. O'Neill for a minute on this severance issue. Okay. The Supreme Court says in that case the co-defendant did take the stand and he denied making the statement that somebody said he made, just like Knighton here. Yes. And the Supreme Court says we conclude that where a co-defendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant concerning the underlying facts, the defendant has been denied no rights protected by the Sixth and Fourteenth Amendments. It looks like it's on all fours with this case and goes against you. What am I missing? Well, I think, Your Honor, the O'Neill case, as was previously stated, should be read together with Douglas v. Alabama. I did read them together. What am I missing? Two cases where the person won't take the stand so you can't cross-examine them, one where he does and he says, I never said that, and the Supreme Court says the first two are bad, the third is okay. I think that these cases can be distinguished factually on the occurrence. Your Honor just described the circumstances in Nelson v. O'Neill. Correctly, Douglas did not take the stand, and in Bruton, the whole issue is we have these inculpatory statements that are coming in through double hearsay, basically, and there was no redaction, there was no limiting instruction, there was nothing to protect my client from prejudice of this joint trial. And that's what it comes down to. Under Richardson v. Marsh, the Court suggested several alternatives when you have statements such as we have here. It suggested redacting the statement. In other words, taking out the youngster's feca, or they all took turns. It also suggested that it could be, besides deletions, there could be use of separate juries. That's been done many times. These statements were extremely prejudicial, and they were used against the co-defendants. In my client's case, there is nothing but very weak circumstantial evidence, very weak. There is nobody to put my client dragging the body into the shower room. Ramirez said that Marsh, Lujan, and Knighton dragged the body to the shower room. No one saw Culbertson involved, and the only evidence that was actually presented against Mr. Culbertson is he was convicted by a cut on his lip. A defense witness testified that he saw Knighton headbutt Mr. Culbertson because he was freaking out when he saw the blood all over. But yet that's the only hard evidence from Mr. Culbertson, except for the generalized prejudicial evidence about they're all from the North Redondo, and he was housed in the same cell. And this particular hearsay statement from Ramirez regarding what Mr. Knighton allegedly said inculpates my client. Ramirez was subject to Crosto? Yes, Your Honor. Thank you, Counsel.  May it please the Court. Again, I'm Roy Preminger, appearing on behalf of the respondent in the case of Culbertson v. McGrath. At the risk of being redundant, I'm going to take the opportunity to cite a post-Douglas case that we've cited in our appellee's brief, Crawford v. Washington, 541 U.S. 36, at page 59, footnote 9, where the United States Supreme Court said finally, we reiterate that when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior statements. So that's the most recent pronouncement by the U.S. Supreme Court. When the declarant appears at trial, testifies, allows himself to be cross-examined, as Knighton did in this case, there's no brutal violation. And Nelson v. O'Neill is right on all fours with this case, where the California – excuse me, again – where the United States Supreme Court once again said that when the declarant appears for cross-examination, denies the prior statement, there's no denial to the defendant of cross-examination. As far as the prejudicial association claim, that also lacks merit. The simple reason that unlike the three co-defendants who were convicted of murder, the jury acquitted Culbertson of the murder. They convicted him of conspiracy and accessory after the fact. But they obviously weren't prejudiced against him by his association with the co-defendants since they acquitted him of the most serious charge. Regarding the claim that the trial court didn't redact Ramirez's testimony or give limiting instructions, there was no request for redaction or limiting instructions, but the court did give a limiting instruction to the extent it said that none of the defendants could be convicted on the basis of Ramirez's testimony unless that testimony was corroborated. Counsel, it looked to me as though Culbertson was a whole lot less blameworthy than his cellmates, and it looked to me as though the jury must have disbelieved Ramirez's testimony about Knighton saying that Culbertson had stabbed the victim in the ear until his brains came out of his ear. Have I got the facts right? I'm not prepared to say that we can tell from the record whether Culbertson was less blameworthy, but obviously the jury felt that way by acquitting him of the murder. That's what I meant. Yes, so they probably did not believe Ramirez's testimony about divergenizing Culbertson, which meant he was taking part in the stabbings. Was there a way that the jury could acquit Culbertson if they thought all that happened is he was there in the cell and he didn't do anything except what Knighton made him do? Well, there was no defense by Culbertson that he was coerced or he was under duress to do anything that he was accused of doing. Did Culbertson testify? No. He didn't present, he didn't argue a duress defense? No. Did the jury instruction require some sort of intent by Culbertson? I suppose it must have on the conspiracy and accessory. I'm sure it did. I don't have the jury instructions in mind specifically, but without the intent to commit the target crime of the conspiracy plus one or more reward acts, you can't have conspiracy under California law. And I'm sure the target crime here was murder. What we do know went on inside that cell after the murders was that there was an attempt to clean up the blood spatters. This is a question that really is not perhaps appropriate to ask you, but I was amazed at the picture of the way the jails seem to be run. Does the Attorney General have any...? I was amazed. I was shocked. I was disappointed. It's like a prisoner's room. In all honesty, I'm not prepared to say that things are any better there. Well, is anybody doing anything? I sure hope so. The L.A. County jail system has been under order by a federal judge for years to clean up things. It is under order now. It's still under order. As well as the whole state prison system. But I remember reading another case subsequent to this case where essentially the same type of testimony came out. It was basically the officers or the guards there, they're studying for their night school exams, they're studying for promotional exams, and they let prisoners in and out without checking their identification and so on. Sure, it's shocking, it's terrible, but that doesn't alter the facts of this case. No, no. I would think if Lee Baca read this, he'd run over to jail and say, we've got to tighten things up right now. Who's Lee Baca? He's the sheriff of Los Angeles County. I had the same impression as Judge Paez. It looked like the prisoners were on the place. It looked like the most violent, scary, dangerous prisoners were on the place and the guards left. I prosecuted at the trial level a murder case years ago, and during the pre-trial proceedings, I was the trial coordinator for the office at that time, and I set up a tour of L.A. County Jail. And so we were going through the tour in an area where prisoners were roaming around freely, and somebody came up behind me and said, Mr. Premature, have you got a change for $1,000? I turned around, it was the defendant I was prosecuting. It was a brutal, heinous murder. He was walking around showing me a phony $1,000 bill. I mean, I don't know what goes on there, why it's going on there. Has my office investigated it? I don't know that we've been invited to. I personally would love to investigate it. But obviously, things are not running. Are it really us that are running it, the federal courts? Of course it's not up to us. It's up to the sheriff of Los Angeles County, and if the sheriff doesn't do it, and if the California courts don't do it, then... Are they under a federal court order, did you say? Yes, they are. They are under a federal court order. Dean Ferguson has the case. I know that for a fact, because another capital case that I represent, the respondent on the Jenkins, Daniel Jenkins capital case, now pending federal habeas, the petition has been filed, conviction was affirmed, and habeas denied by the California Supreme Court. But there's extensive reference in there to orders that have been issued over a long period of years by a federal judge, and I'm sorry, I've forgotten his name, right now. And periodically, that order is reviewed, and they've made some changes in the L.A. County jail system. They've tightened things up a little bit, but things still aren't really what they should be as of several years ago. I can't speak to the conditions there now, whether it's as bad as it was when this murder occurred. I can't say. Apparently, they have locks on the doors. They've got locks on the doors, but they apparently open them every time they see an inmate without knowing his identity. Do they open them remote from a booth? They open them remotely. They have, according to the record here, they have two ways of doing them. One, I think they've got a control button, and another, they've got a lever they pull or something. I used to visit my clients in jail. It was kind of a big deal, actually. Somebody would get them. They'd unlock this particular cell. Somebody else would be watching on TV. Somebody would escort them down to the attorney's room. But these guys, they just get to wander around, do what they want? It certainly looked like it at the point in time that these events occurred. Most of the complaints about the county jail that are being monitored by the federal courts now have to do with overcrowding, inadequate medical treatment, putting dangerous inmates together with, shall we say, vulnerable inmates and that type of thing, inadequate space and so on. Obviously, if things were going right there, they wouldn't be under federal court order, as they have been for many years. To improve things, apparently some improvements have been made, but it's not an ideal situation, and they probably need another jail because of the overcrowding, and we keep reading in the papers that because of the overcrowding. You need to lock the doors, too. Pardon me? You need to lock the doors, too. Well, that would be helpful. Well, there was this incident where an inmate escaped by putting a picture of Eddie Murphy on a badge and said, I'm Eddie Murphy. I'm just getting locked out. That was in the papers in the last few years. If I understand this case correctly, Knighton can just walk around freely between his cell and the shower room with a dead body. Well, as a matter of fact, as your honors will recall, because of the writing from the cell block above and things being tossed over the railing, water and ashes and whatever, the guards in the defendant's cell block supplied the sheaths ostensibly to have all the debris and the water wiped off the floor at the cell block until sheaths were used to wrap up the victim's dead body. Thank you, counsel. Thank you. You exhausted your time, but if you want to take another 30 seconds, go ahead. The only comment I have to make in response is that I believe Wharton v. Borting found that Crawford is not retroactive, so it has no applicability in this case. The Supreme Court decided that case in February of this year. Thank you, counsel. Thank you.
judges: Noonan, Kleinfeld, Paez